OPINION
{¶ 1} Appellant, Bonnie Elliott, appeals a decision of the Butler County Court of Common Pleas, Juvenile Division, granting permanent custody of her daughter to Butler County Children Services Board (BCCSB).
 {¶ 2} A baby girl was born to appellant and Kenneth Skwarczynski on May 18, 2000. On the same day, BCCSB filed a complaint alleging that the baby was a dependant child. The complaint was filed on the basis that appellant failed to obtain prenatal care for the child and because BCCSB had concerns due to the fact that appellant had another child removed from her home a few years prior to the baby's birth. Temporary custody was granted to the agency and the baby was placed in foster care directly on her release from the hospital. After a hearing, the trial court found the baby was a dependant child.
 {¶ 3} BCCSB formulated a case plan for the family, which included parenting education classes and individual counseling, along with Skwarczynski maintaining stable employment and the family maintaining stable housing. Appellant and Skwarczynski made little progress toward the plan's ultimate goal of reunification with their daughter. On September 5, 2001, BCCSB filed for permanent custody of the child.
 {¶ 4} Various delays occurred and hearings eventually began before a magistrate in September 2002 and concluded in January 2003. The magistrate issued a decision granting permanent custody to BCCBS. Appellant filed objections to the magistrate's decision which were overruled by the trial court. Appellant now appeals the trial court's decision to grant permanent custody to BCCBS and raises the following six assignments of error for our review.
 {¶ 5} Assignment of Error No. 1:
 {¶ 6} "The court erred and abused its discretion and denied appellant her constitutional due process rights when it denied the motion in limine regarding use of evidence from a prior child's case in the permanent custody proceedings for this child."
 {¶ 7} Assignment of Error No. 2:
 {¶ 8} "The trial court erred and abused its discretion and denied appellant her due process rights when it failed to recuse the magistrate and to assign a new guardian, caseworker and casa to the case."
 {¶ 9} Assignment of Error No. 3:
 {¶ 10} "The court erred and abused its discretion and denied appellant's right to due process and effective assistance of counsel when it refused her request for new counsel."
 {¶ 11} Assignment of Error No. 4:
 {¶ 12} "The court erred and abused its discretion and denied appellant's right to due process when it considered unspecified prior evidence and facts from the case of another child taken four years before the current child."
 {¶ 13} Assignment of Error No. 5:
 {¶ 14} "The court erred and abused its discretion when it granted permanent custody of appellant's child to the state and terminated the father and mother's parental rights and when it found that children's services had made reasonable efforts and/or did not have to make such efforts."
 {¶ 15} Assignment of Error No. 6:
 {¶ 16} "The court's decision and order granting permanent custody to the state was against the manifest weight of the evidence."
 {¶ 17} For ease of discussion, we will address appellant's assignments of error out of order, beginning with her fifth and sixth assignments of error. In these assignments of error, appellant contends that the trial court's decision to grant permanent custody to BCCBS is against the manifest weight of the evidence.
 {¶ 18} At the permanent custody hearings, testimony was presented from several persons, including the BCCSB caseworker, an instructor who works teaching developmental living skills through in-home parenting classes, the BCCSB social services aide, the child's foster mother, the Court Appointed Special Advocate (CASA), and a psychologist. All testified regarding the biological parents' inability to care for the child. Appellant and Skwarczynski also testified and presented evidence from friends regarding their home and parenting ability.
 {¶ 19} The evidence shows that appellant deliberately failed to obtain prenatal care for the child, partly out of fear that BCCSB would become involved if the agency knew she was pregnant. Other evidence shows that appellant is living with Skwarczynski and his wife, Tammy Skwarczynski, who he says he plans to divorce. Appellant and Skwarczynski testified that they are engaged and plan to marry after appellant is divorced. However, all three adults plan to continue living together, even if a divorce and remarriage occur. Tammy testified that she plans on staying in the house so that she and Skwarczynski can continue to raise their daughter, who was thirteen at the time of the hearing. All three adults sleep in the living room of the home.
 {¶ 20} Evidence at the hearings established problems related to the stability, safety and cleanliness of housing for a young child. The parents moved numerous times after the birth of the child and the various homes were described as dirty and cluttered. Witnesses testified to problems such as little furniture, dirty dishes, hundreds of flies, tools and car parts lying all over, holes in the floor, and exposed wiring. The parties had several animals, including a rabbit, bird, hamster and a dog with a skin disorder that shed chunks of fur over the home. Other problems included a dead pigeon and bat on outside stairs that were not removed for several weeks and a lack of furniture in the home. BCCSB provided help in the form of classes and in-home services, and although there were a few times the condition of the home appeared to be improving, it quickly returned to its original condition.
 {¶ 21} Testimony was also presented that appellant receives Social Security income and that this is the primary source of income for the adults in the home. Tammy Skwarczynski does not work and Kenneth Skwarczynski was unable to maintain steady employment. Evidence shows that he had ten jobs over the past two years with the longest lasting three or four months. Instead, appellant's SSI check was used to support the three adults and the Skwarczynskis' daughter.
 {¶ 22} The evidence at the hearing established that appellant appears to love her child and enjoys being with her. However, parenting skills are an issue. Witnesses described several times when the safety of the child was an issue with appellant, such as failing to support the child's neck as an infant and several instances in which appellant almost dropped the child. Other instances were described in which appellant seemed to be unaware of basic safety issues. For example, appellant permitted the young child to climb on a picnic table, the child fell and hurt herself, then appellant permitted the child to climb on the table again.
 {¶ 23} Appellant underwent several classes and in-home training on issues related to parenting. While the witnesses testified that appellant was interested in the information and wanted to learn, she was unable to implement what she had learned into her interactions with the child and had to be repeatedly reminded and prompted on basic parenting practices. BCCSB workers described appellant as failing to be able to take care of the everyday needs of the child, such as changing diapers and putting on socks and shoes, a task which appellant was unable to accomplish within twelve minutes. In addition, appellant became defensive and indicated she did not want advice on how to parent.
 {¶ 24} Testimony was presented to show that the child in this case has special needs that require a mature, organized caregiver. The child is delayed in every area and must attend physical, occupational and speech therapy. She is delayed mentally and has behavior problems, including aggressive behaviors and self-injury behaviors. Her foster mother testified that she had to spend all her time with the child during the day and she requires constant supervision because of her behaviors.
 {¶ 25} Appellant's mental state was also an issue at the hearing. Although the case plan called for individual counseling and numerous referrals were made, appellant never attended any sessions, and instead stated that she did not go because she did not need counseling.
 {¶ 26} A psychologist testified that he evaluated appellant in June 2000. As part of his evaluation, he administered a personality test that was invalid due to appellant's defensive approach to the test. He also administered an intelligence test. The psychologist stated that he does not think appellant could be able to be an independent caretaker for a child. His opinion was based on appellant's cognitive functioning, defensive attitude, need for a number of services and a concern with her ability to perform the basic activities of daily living.
 {¶ 27} Several case plans were filed, but appellant made little progress toward the plan's goals. Appellant failed to obtain some of the services and evaluations called for by the plan because she felt she did not need them. Appellant completed other parts of the plan, such as the in-home parenting classes, but she was unable to implement what she learned into her interactions with the child. The caseworker testified that the permanent custody motion was filed in September 2001 because BCCSB had been working with the parents since June 2000 and they had participated in very little of the service plans and with regard to the plans that they did participate in, they were not showing progress.
 {¶ 28} Before severing a parent's constitutionally protected liberty interest in the care and custody of his child, the state is required to prove by clear and convincing evidence that the statutory standards for permanent custody have been met. Santosky v. Kramer (1982), 455 U.S. 745,759, 769, 102 S.Ct. 1388. Clear and convincing evidence requires that the proof produce in the mind of the trier of fact a firm belief or conviction as to the facts sought to be established. Cross v. Ledford (1954),161 Ohio St. 469, paragraph three of the syllabus. Appellate review of a trial court's decision finding clear and convincing evidence is limited to determining whether "sufficient credible evidence" exists to support the trial court's determination. In re Ament (2001), 142 Ohio App.3d 302,307; In re Starkey, 150 Ohio App.3d 612, 2002-Ohio-6892, at ¶ 16.
 {¶ 29} Pursuant to R.C. 2151.414(B)(1), a trial court may grant permanent custody of a child to a state agency if the court finds, by clear and convincing evidence, that it is in the child's best interest to do so, and that any one of the following circumstances apply:
 {¶ 30} "(a) The child * * * cannot be placed with either of the child's parents within a reasonable time or should not be placed with the child's parents;
 {¶ 31} "(b) The child is abandoned;
 {¶ 32} "(c) The child is orphaned, and there are no relatives of the child who are able to take permanent custody;
 {¶ 33} "(d) The child has been in the temporary custody of one or more public children services agencies or private child placing agencies for twelve or more months of a consecutive twenty-two month period ending on or after March 18, 1999."
 {¶ 34} In this case, the trial court found that granting permanent custody to BCCBS was in the child's best interest and both that the child had been in the custody of BCCBS for twelve or more months and that she could not be placed with either of her parents within a reasonable time.
 {¶ 35} We begin by examining whether there was clear and convincing evidence that granting permanent custody was in the child's best interest. The Revised Code provides that in considering the best interest of a child in a permanent custody hearing, "the court shall consider all relevant factors, included, but not limited to the following:
 {¶ 36} "(1) The interaction and interrelationship of the child with the child's parents, siblings, relatives, foster caregivers and out-of-home providers, and any other person who may significantly affect the child;
 {¶ 37} "(2) The wishes of the child, as expressed directly by the child or through the child's guardian ad litem, with due regard for the maturity of the child;
 {¶ 38} "(3) The custodial history of the child, including whether the child has been in the temporary custody of one or more public children services agencies or private child placing agencies for 12 or more months of a consecutive 22 month period ending on or after March 18, 1999;
 {¶ 39} "(4) The child's need for a legally secure permanent placement and whether that type of placement can be achieved without a grant of permanent custody to the agency;
 {¶ 40} "(5) Whether any of the factors in divisions (E)(7) to (11) of this section apply in relation to the parents and child."
 {¶ 41} Viewing the facts of this case in light of the factors above, it is clear that although appellant appears to love her daughter, there are problems with the interaction and interrelationship due to safety concerns. Although the child is too young to give an opinion, the guardian ad litem recommended granting permanent custody to BCCSB. The child has never been in appellant's custody and has been in the custody of BCCSB since birth. Evidence shows that the child is in need of a stable home environment with a mature, organized caregiver who can provide for her special needs. Although given considerable time and instruction, appellant failed to demonstrate that she is able to care for even the child's most basic needs.
 {¶ 42} Furthermore, the statute requires consideration of whether any of the factors in R.C. 2151.414(E)(7) to (11) apply. R.C. 2151.414(E)(11) states that a court must consider whether "[t]he parent has had parental rights involuntarily terminated pursuant to this section or section2151.353 or 2151.415 of the Revised Code with respect to a sibling of the child."
 {¶ 43} As previously mentioned, appellant had another child who was removed from her home due to the same type of concerns and her inability to rectify the problems. Permanent custody of appellant's son was granted to BCCSB in 1999. In that case, the court noted that appellant took more than two years to address the problems that led to removal of her son from the home, but failed to do so.
 {¶ 44} Considering all of the evidence, we find that the trial court did not err in determining by clear and convincing evidence that it is in the child's best interest to grant permanent custody to BCCSB.
 {¶ 45} In addition, we find no error in the trial court's determination that reasonable efforts were made. Appellant argues that she completed the relevant case plan services and there was no showing that the services she did not complete were necessary.
 {¶ 46} While appellant did complete the requirements of some of the case plan services, the evidence clearly shows that she was unable to apply what she learned in everyday life. Despite instruction on cleanliness of the home, budgeting, infant safety and other issues, appellant was unable to use what she learned in real life situations. In addition, there is ample evidence that the case plan services she did not complete were important. For example, counseling was included because of concerns with appellant's mental state and level of functioning. Although her drug screen was negative, requiring a drug and alcohol assessment was still a reasonable requirement. Considering all of the services provided to appellant by BCCSB and appellant's repeated inability to complete and apply the requirements of the case plan, we find no error in the trial court's determination that the agency made reasonable efforts to remedy the problems that prevented the child from being placed in a home with her parents. Appellant's fifth and sixth assignments of error are overruled.
 {¶ 47} We now turn to appellant's first and fourth assignments of error. In these two assignments of error, appellant contends that the trial court erred in denying her motion in limine regarding evidence of the prior case in which appellant's parental rights to her son were terminated and by considering unspecified evidence from that case.
 {¶ 48} As mentioned above, the court terminated appellant's parental rights and granted permanent custody of her son to BCCSB in 1997. Before the hearing in the current case, appellant filed a motion in limine to exclude all evidence of the previous determination from the present case. The trial court denied the motion and admitted its previous decision into evidence in the current case.
 {¶ 49} The Ohio Revised Code states that when determining whether a child can be placed with its parents within a reasonable time, "the courtshall consider all relevant evidence." R.C. 2151.414(E) (emphasis added). One of the factors a court must specifically consider under this section is whether "[t]he parent has had parental rights involuntarily terminated pursuant to this section or section 2151.353 or 2151.415 of the Revised Code with respect to a sibling of the child." R.C.2151.414(E)(11). Likewise, when determining the best interest of the child, the court "shall consider all relevant factors * * *." R.C.2151.414(D). (Emphasis added.) Again, under this section, the court must specifically consider whether the parent has previously had parental rights terminated. R.C. 2151.414(D)(5).
 {¶ 50} Therefore, the trial court was specifically required to consider the prior termination of appellant's parental rights. Appellant argues, however, that even if the court was required to consider the prior termination of parental rights, it could only consider the fact that the parent's parental rights were terminated, and not the facts surrounding the termination.
 {¶ 51} We disagree. The statute specifically requires the court to consider not only the prior termination of parental rights, but also all relevant factors. The circumstances surrounding a prior termination of a parent's parental rights are highly relevant in a hearing to terminate the rights of the same parent regarding another child.
 {¶ 52} In this case, the trial court admitted its decision terminating appellant's parental rights to her son. Therefore, despite appellant's arguments to the contrary, the evidence considered by the court is part of the record. The prior decision shows that appellant had the same problems in relation to her son as in this case, and that despite repeated efforts to help appellant remedy the situation, appellant was unwilling or unable to do so. This fact is highly relevant to the instant case, in which, again, despite repeated efforts, appellant failed to remedy the problems that caused removal of her daughter. Appellant's first and fourth assignments are overruled.
 {¶ 53} In her second assignment of error, appellant contends that the trial court erred when it failed to disqualify the magistrate from hearing the case, because the same magistrate heard the evidence in the previous case involving termination of her parental rights to her son. The magistrate denied appellant's motion for recusal.
 {¶ 54} Appellant filed a motion with the trial court to set aside the magistrate's order and to remove the magistrate from the case, arguing that the magistrate was biased and prejudiced due to his involvement in the previous case. Appellant also requested that the trial court remove the guardian ad litem and the CASA assigned to the case for the same reasons, as both were involved in their current capacities in the case involving appellant's son. The trial court found no prejudice or bias and denied the motion.
 {¶ 55} Removal of a magistrate is within the discretion of the trial judge who had referred the matter to the magistrate and must be sought by a motion filed with the trial court. In re Disqualification of Wilson
(1996), 77 Ohio St.3d 1250; In re Disqualification of Light (1988),36 Ohio St.3d 604; Unger v. Unger (Dec. 29, 2000), Brown App. No. CA2000-04-009. We review the trial court's decision under an abuse of discretion standard. See id.
 {¶ 56} We find no abuse of discretion in the trial court's decision to deny the motion for disqualification of the magistrate. Appellant argues only that the magistrate was biased because he presided over the previous case. The record does not suggest any type of bias or prejudice on the part of the magistrate simply because he presided over the case involving appellant's son. Likewise, there is no evidence that the guardian ad litem or CASA was prejudiced, and both testified primarily regarding appellant's current problems in reunification with her daughter. Appellant's second assignment of error is overruled.
 {¶ 57} In her third assignment of error, appellant contends that the trial court erred in denying her request for new counsel. On August 30, 2002, appellant's attorney filed a motion to withdraw as counsel, based on the fact that appellant informed her counsel that she did not have confidence in his representation of her in this matter. At a hearing on the motion, appellant's attorney informed the court that appellant told him she felt that he had another agenda and did not have her best interests at heart. Appellant also requested removal of her court-appointed guardian ad litem based on the same reasons.
 {¶ 58} The guardian informed the court that it was in appellant's best interest for both of them to remain on the case, because it appeared that otherwise there would be no one to represent her. BCCSB opposed the motion on the basis that the hearing was set for less than two weeks away and had been continued five previous times. BCCSB also argues that appellant continually fires her attorneys and that her current counsel was her third appointed attorney. Both the child's guardian ad litem and the CASA opposed withdrawal and any further continuances of the matter based on the fact that the child was placed in foster care at birth, and over two and a half years later, was still in foster care with no resolution of the matter. They also indicated that the request appeared to be a delaying tactic and it was necessary to resolve the issue without further delay in order to promote the child's best interest.
 {¶ 59} It is well-settled that unlike the right to counsel, the right to choice of counsel is not absolute. State v. Patt, Lake App. No. 2002-L-073, 2004-Ohio-2601. Furthermore, there is no right to a "meaningful attorney-client relationship." State v. McNeill,83 Ohio St.3d 438, 452, 1998-Ohio-293. Instead, there is only a right to professionally competent, effective representation. Id. A court must balance the right for choice of counsel against the interest in the administration of justice. State v. Hayslip (May 6, 1991), Clinton App. No. CA90-05-92. The decision whether to dismiss court appointed counsel is within the sound discretion of the trial court. Id.; see, also,McNeill at 452.
 {¶ 60} We find no abuse of discretion in the trial court's decision to deny appellant's attorney's request to withdraw. As mentioned above, appellant's counsel at the hearing was her third appointed counsel. There was no indication that she would be able to obtain counsel before the hearing date. According to appellant's guardian ad litem, appellant informed him that she had a phone conversation with "an attorney in Oxford by the name of Monica." Appellant was unable to remember the last name of the attorney, but told the guardian that she was quoted a price for a retainer and had raised half of the money so far. The guardian also stated that working with appellant is "definitely a challenge and can be difficult at times." In addition, the request came twelve days before the hearing was scheduled and it was clearly in the child's best interest not to grant another continuance for appellant to obtain counsel.
 {¶ 61} Appellant also argues that she was denied effective assistance of counsel because the trial court denied the request for new counsel. We find no merit to this argument.
 {¶ 62} To establish ineffective assistance of counsel, appellant must meet a two-part test. Strickland v. Washington (1984), 466 U.S. 668,689, 104 S.Ct. 2052. First, appellant must show that counsel's actions were outside the wide range of professionally competent assistance. Id. Second, appellant must show that she was prejudiced as a result of counsel's actions. Id.
 {¶ 63} Appellant presents no specific facts in support of this argument, and only states that "to require [a]ppellant to proceed to trial with counsel with whom she had not even been in direct communication for a lengthy period of time and when there was no attorney-client trust relationship" denied her Constitutional right to due process and effective assistance of counsel. We have carefully reviewed the transcript of the hearing and find both that appellant was more than adequately represented and that no prejudice occurred. Appellant's third assignment of error is overruled.
Judgment affirmed.
Powell, P.J., and Walsh, J., concur.