[Cite as *Majeed v. Majeed*, 2016-Ohio-7243.]

**IN THE COURT OF APPEALS OF OHIO**
**SECOND APPELLATE DISTRICT**
**MONTGOMERY COUNTY**

| | | |
|---|---|---|
| LATISHA MAJEED | : | |
| | : | |
| Plaintiff-Appellee | : | C.A. CASE NO. 26957 |
| | : | |
| v. | : | T.C. NO. 15DV775 |
| | : | |
| ABDUR R. MAJEED | : | (Civil Appeal from Common Pleas |
| | : | Court, Domestic Relations) |
| Defendant-Appellant | : | |
| | : | |

. . . . . . . . . . .

**O P I N I O N**

Rendered on the ___7th___ day of _____October_____, 2016.

. . . . . . . . . . .

LATISHA MAJEED, 4522 Prescott Avenue, Dayton, Ohio 45406
        Plaintiff-Appellee

GEORGE A. KATCHMER, Atty. Reg. No. 0005031, 1886 Brock Road N.E.,
Bloomingburg, Ohio 43106
        Attorney for Defendant-Appellant

. . . . . . . . . . . .

FROELICH, J.

{¶ 1} Abdur Majeed appeals from a judgment of the Montgomery County Court of

Common Pleas, which issued a domestic violence civil protection order (CPO) to his wife,

Latisha Majeed.   For the following reasons, the trial court's judgment will be affirmed.

**I. Facts and Procedural History**

{¶ 2} On June 26, 2015, Latisha Majeed ("Latisha") filed a petition for a domestic

violence CPO, claiming that she and her husband, Majeed, were residing separately, and that Majeed would come to her residence, control her, and mentally abuse her. She asserted that he had come to her residence, blocked her driveway, and refused to allow her to go to crisis groups and therapy appointments. She stated that she was scared to come outside and for her life, and that he controlled her access to food and money. Her petition indicated that she would be filing a petition for divorce that same day.

{¶ 3} After an ex parte hearing, the trial court issued an ex parte CPO and scheduled a hearing before a magistrate for July 9, 2015. Majeed was personally served with the order and notice of hearing on July 7, 2015.

{¶ 4} A hearing was held before a magistrate on July 9, as scheduled. Majeed did not appear. Nothing in the record suggests that Majeed contacted the court prior to the hearing to seek a continuance.

{¶ 5} At the hearing, Latisha reiterated that her husband "is very controlling and he's mentally abusing me." She testified that he controls her food and how she drives, and he has forbidden her to work. Latisha stated that she used to be a nurse, that she has no income, and that he pays for everything. She indicated that she suffers from anxiety.

{¶ 6} Latisha described several incidents involving her husband. First, she described an incident on April 14, 2015, in which Majeed "took his hand" and "shoved" her neck while she was driving. Latisha had pulled over at a gas station and kicked Majeed out of the car, "because [she] was scared for [her] life." The police were called (by someone other than Latisha) as a result of this incident, and she went to a hospital for treatment. Latisha was diagnosed with a cervical strain; she provided documentation

of her hospital visit as an exhibit. Second, Latisha testified that she has four puppies and that Majeed killed one of her dogs; she indicated that this incident was also reported to the police. Third, Latisha indicated that she was unable to get a daycare started at her home, because Majeed came to her backyard, took his clothes off, and acted as if he were "ejaculating at me."

{¶ 7} Near the end of the hearing, the magistrate stated, "[W]e're going to help you * * * by issuing a civil protection order," and she informed Latisha that she would issue a written decision.

{¶ 8} A week later, on July 16, 2015, the magistrate issued a domestic violence CPO to Latisha. The order contained findings of fact, which read:

> The parties are husband and wife. They have split and are divorcing. Nevertheless, the respondent still attempts to control the petitioner, causing her mental anxiety and stress in attempting to control her food, as well as her driving. They had argued a lot.
>
> On April 14, 2015, while petitioner was driving, the respondent hit her in the neck, causing her to swerve. Petitioner suffered a cervical strain from the blow [Exhibit 1]. Petitioner was able to get respondent out of the car at a gas station. The police were called at the gas station, and she went back and made a police report.
>
> Petitioner testified that the respondent called her to tell her that he had killed one of her puppies.
>
> The petitioner is in fear of the respondent because of his actions and is entitled to a five year Civil Protection Order as she has proven her case

by the preponderance of the evidence.

The order was signed by both the magistrate and the trial court, and it included notification about filing objections to the order. *See* Civ.R. 65.1 (governing civil protection orders).

{¶ 9} The CPO was served on Majeed on July 27, 2015. Two days later, he filed objections to the July 16 decision, and he requested a transcript and an opportunity to supplement his objections.

{¶ 10} Majeed filed timely supplemental objections on October 6, 2015. In his objections, he indicated that he had "made numerous calls to police dispatch regarding the violent acts committed by the petitioner [Latisha] toward me that occurred in and around our home and in other public places." Majeed stated that his wife had repeatedly thrown heavy objects and knives at him, hit him, was verbally abusive, and made false accusations against him. He stated that his wife blamed him for her use of alcohol and smoking, lack of employment, and poor mental health.

{¶ 11} Majeed provided an alternative version of the events that occurred in April 2015 in the van, stating that his wife had become upset with him, that she drove around for hours cursing him, and that he had made several phone calls to police dispatch while in the van. Majeed further stated that, when Latisha stopped at a gas station, she began hitting him with a shovel or axe handle as he exited the vehicle. Majeed called the police, who "suggested that we amend our differences and that me and my wife go home." Majeed stated that his wife's neck issues began while she was working as a nurse and were aggravated by an automobile collision in 2014.

{¶ 12} Majeed apologized for his absence from the July 9 hearing. He explained that his father, who was 98 years old, had a "life threatening accident and my brother and

I were assisting him thru hospital procedures, relocation to rehab and to assisted living."

{¶ 13} Latisha responded to Majeed's objections, providing additional documentation to support her testimony.

{¶ 14} On November 18, 2015, the trial court overruled Majeed's objections, concluded that Latisha had proven her case by a preponderance of the evidence, and issued a five-year CPO against Majeed. The trial court stated that it had carefully considered the magistrate's decision, the findings of fact contained therein, Majeed's objections, Latisha's response to the objections, and the transcript of the proceedings. The trial court summarized Latisha's testimony at the hearing and reviewed the definition of domestic violence set forth in R.C. 3113.31. The court found that "Latisha has shown by a preponderance of the evidence that [Majeed's] actions have resulted in an act of domestic violence as defined by statute. [Majeed's] objections have no evidentiary basis."

{¶ 15} Majeed appeals from the trial court's judgment, raising two assignments of error.

## II. Petitioner's Case was Proven by Preponderance of Evidence

{¶ 16} In his first assignment of error, Majeed claims that the trial court erred in determining that Latisha had proven her case by a preponderance of the evidence.

{¶ 17} R.C. 3113.31 authorizes the domestic relations court to issue a domestic violence CPO to protect family and household members from domestic violence. R.C. 3113.31(A)(1) defines "domestic violence" to mean, in part, "the occurrence of one or more of the following acts against a family or household member: (a) Attempting to cause or recklessly causing bodily injury; (b) Placing another person by the threat of force in fear

of imminent serious physical harm or committing a violation of section 2903.211 [menacing by stalking] or 2911.211 [aggravated trespass] of the Revised Code; * * *." R.C. 2903.211(A)(1) provides: "No person by engaging in a pattern of conduct shall knowingly cause another person to believe that the offender will cause physical harm to the other person or a family or household member of the other person or cause mental distress to the other person or a family or household member of the other person."

{¶ 18} "[W]hen granting a protection order, the trial court must find that petitioner has shown by a preponderance of the evidence that petitioner or petitioner's family or household members are in danger of domestic violence." *Felton v. Felton*, 79 Ohio St.3d 34, 42, 679 N.E.2d 672 (1997), citing R.C. 3113.31(D). When reviewing whether a protection order should have been granted, we must determine whether "sufficient competent, credible evidence" was presented to support a finding that the respondent engaged in acts or threats of domestic violence. *Charles v. Peters*, 2d Dist. Greene No. 2015-CA-52, 2016-Ohio-1259, ¶ 9.

{¶ 19} Latisha was the sole witness at the July 9 hearing on the domestic violence CPO. As detailed above, Latisha testified that her husband controlled various aspects of her life, and she described several specific incidents with her husband, including one where he injured her neck when he grabbed her while she was driving on April 15. Latisha indicated that Majeed has been mentally abusing her and that she has anxiety and is fearful. She stated, "It's scary to me. I don't know what he's going to do."

{¶ 20} Latisha's testimony, if believed, was sufficient to prove, by a preponderance of the evidence, that Majeed had committed domestic violence, as defined by R.C. 3113.31(A)(1). The trial court reasonably credited her testimony, and it did not err in

determining that Latisha had proven her case by a preponderance of the evidence.

**{¶ 21}** Majeed presented an alternative version of events in his objections. However, he did not testify at the July 9 hearing, and his objections were merely unsworn statements. The trial court did not err in rejecting Majeed's objections for lack of an evidentiary basis.

**{¶ 22}** Majeed's first assignment of error is overruled.

### III. Comment by the Magistrate

**{¶ 23}** Majeed's second assignment of error states, "The Court inappropriately showed religious favoritism and violated the Appellant's right to equal protection of law."

**{¶ 24}** In this assignment of error, Majeed claims that the magistrate made an inappropriate religious comment at the July 9 hearing and that her comment indicated a religious bias against him.

**{¶ 25}** While describing the experiences that led her to seek a domestic violence CPO, Latisha testified that Majeed was "Islamic" and "Muslim." At the conclusion of the hearing – after the magistrate had indicated that she would grant a domestic violence CPO and would issue a written decision – the following exchange occurred:

THE PETITIONER: Thank you very much for your time.

THE COURT: Be careful. Take care of yourself.

THE PETITIONER: Yes, with God's help I've been depressed and it's the worst feeling in the world to feel like Jesus is not real. I just got back with Jesus and I'd like it to stay there.

THE COURT: An[d] He would like you to stay there also.

THE PETITIONER: Yes, ma'am.

THE COURT: Thank you, ma'am.

THE PETITIONER: God bless.

{¶ 26} "Judicial bias is 'a hostile feeling or spirit of ill will or undue friendship or favoritism toward one of the litigants or his attorney, with the formation of a fixed anticipatory judgment on the part of the judge, as contradistinguished from an open state of mind which will be governed by the law and the facts.' Trial judges are 'presumed not to be biased or prejudiced, and the party alleging bias or prejudice must set forth evidence to overcome the presumption of integrity.' " (Internal citations omitted.) *Weiner v. Kwait*, 2d Dist. Montgomery No. 19289, 2003-Ohio-3409, ¶ 89-90.

{¶ 27} There is nothing in the record to suggest that the magistrate was biased against Majeed due to his faith. Even if we were to construe the magistrate's remark as reflecting that she held different beliefs than Majeed, as he apparently alleges, there is no suggestion in the record that the magistrate was biased toward those of one faith and/or against those of other faiths.

{¶ 28} Certain statements may create the appearance that a court is improperly basing its ruling on the judge's personal beliefs, and we caution judicial officers against making any comments that could reasonably be interpreted or perceived as affecting their impartiality. In this case, however, there is nothing in the record to indicate that religious beliefs affected the trial court's issuance of a domestic violence CPO. The magistrate's comment occurred at the end of the hearing, after the magistrate had informed Latisha of how she would rule, and it was in direct response to a religious comment made by Latisha. Although the magistrate knew throughout the hearing that Majeed was Muslim, there is no indication that Majeed's religion affected the magistrate's analysis or that the

magistrate improperly considered anything other than the relevant law and the evidence presented at the hearing in determining that Latisha was entitled to a domestic violence CPO.

{¶ 29} Significantly, the judgment on appeal is not the magistrate's ruling, but the judgment entered by the trial court after objections to the magistrate's ruling by Majeed. The trial court's decision indicated that it had conducted an independent review of the record. Upon that review, the trial court found that Latisha had proven by a preponderance of the evidence that Majeed's actions resulted in an act of domestic violence, that Majeed's objections lacked merit, and that Latisha was entitled to a five-year domestic violence CPO against Majeed. There is no suggestion, either by Majeed or in the record, that religious beliefs had any bearing on the trial court's determination. *See Cutler v. Reed*, 12th Dist. Butler No. CA2015-06-105, 2016-Ohio-1151, ¶ 22 (any alleged bias or prejudice exhibited by the magistrate in issuing CPO was rendered harmless by virtue of the trial court's review of the record). Accordingly, we find no basis to conclude that the domestic violence CPO was the result of religious bias or that the trial court violated Majeed's right to equal protection of law.

{¶ 30} Majeed's second assignment of error is overruled.

### IV. Conclusion

{¶ 31} The trial court's judgment will be affirmed.

. . . . . . . . . . . . .

FAIN, J. and HALL, J., concur.

Copies mailed to:

Latisha Majeed
George A. Katchmer

Hon. Timothy D. Wood